## Case No. 6,229.

### HAVEN et al. v. HOLLAND.

[2 Mason, 230.] [1]

Circuit Court, D. Massachusetts. May Term, 1820.

MARINE INSURANCE—LETTER OF MARQUE — POWERS OF—POWERS OF MASTER—DEVIATION.

1. A vessel armed as a letter of marque, and insured as such, has no right to cruise at large for prizes, but she may chase and capture hostile vessels coming in sight, in the course of her voyage, without its being a deviation; and there is no difference in the law, if the vessel be not described in the policy as a letter of marque, provided that fact be made known to the underwriter before underwriting the policy.

2. Every vessel, whether armed or not, has a right of self-defence against hostile attacks; and the master has a large discretion on this subject. He is not bound to attempt an escape in the first instance, and only to repel an attack when made. He is, on the other hand, at liberty to lay to, or attack the enemy ship, or chase her, if he deems that the best means of self-defence, and not wait until a direct attack is made on his own vessel, for self-defence may be then fruitless, by his being crippled.

3. If a vessel capture an hostile vessel in self-defence, she has a consequent right to take possession and man out the prize, for she has a right to make her victory effectual, and it will be no deviation, if thereby her own crew be not injuriously weakened.

Assumpsit upon a policy of insurance upon merchandise on board of the ship Volant, from her port of lading in France, to her port of discharge in the United States. The policy was in the usual form, and the subscription of the defendant was for 1,000 dollars. The declaration contained two counts, in one of which the plaintiffs [Nathaniel Haven and another] aver a loss by capture, and in the other ask for a return of the premium. The facts were these. The Volant was captured on her homeward voyage by the British, carried to Halifax, and there, with her cargo, libelled and condemned as prize; war then existing between the United States and Great Britain. Before the ship sailed from Bayonne, where she had been a long time detained, from the difficulty of obtaining permission to unlade her outward, and take on board her homeward cargo, the master applied for, and obtained from the American minister, a commission and letter of marque, and increased his armament from four to fourteen guns, and his crew from twenty-five or thirty to seventy men. The ship and outward cargo were addressed to the house of Morton & Russell, merchants in Bordeaux, and they were consulted by the master and a Mr. Bartlett, who went out as joint supercargo of the Volant, (but was not the agent or consignee of the plaintiffs) as to all important proceedings concerning the ship or voyage; and particularly as to the propriety and expediency of taking the commission aforesaid. Their advice was to take the commission, it being understood, that the commission was to be taken, and the armament increased, for the purpose of defence only. There were, however, no written directions, tending to restrict the use of the commission: there being no other orders than those which were given at the commencement of the outward voyage; which were to proceed from France on the return voyage, as expeditiously as possible. After being out three or four days from France, a vessel was descried, which was supposed to be standing for the Volant; and attempts were made to avoid her, but the two vessels having approached so near to each other as to enable the master of the Volant, to ascertain that the supposed enemy was of little force, he wore ship and demanded a surrender, which was made, and possession of the vessel, which proved to be the American brig Criterion, lately captured by the British, was taken by the master of the Volant; who took her crew on board of his ship, manned the prize, and ordered her for France, where she arrived and was condemned. The time consumed in taking and manning the brig, was between two and three hours. There was no cruising and no chase, other than what is above stated. Evidence was introduced on the part of the plaintiffs to show, that the defendant [John Holland], at the time of underwriting the policy, knew that the Volant was armed, and had a commission and letter of marque. The defence was, that the stopping to capture the Criterion, and the actual capturing of her, with the consequent delay caused thereby, was a deviation, which discharged the underwriter.

Bliss & Webster, for plaintiffs.
Welsh & Prescott, for defendant.

STORY, Circuit Justice (after summing up the facts to the jury). It does not appear to me, that there is any serious difficulty in the law applicable to this case. It is clear from the authorities, that a vessel insured as a letter of marque, has no right to cruise at large for prizes; but she has, in my opinion, a right to chase and capture hostile vessels, which are met with and are in sight in the course of the voyage.[2] Here, however, the vessel was not insured as a letter of marque, although it was well known to the underwriters, at the time of the insurance, that she possessed such a commission. And the argument is, that knowledge of the fact, does not aid this defect of description in the policy. I do not profess to feel any doubt on this point. It appears to me, that it is wholly immaterial, whether the vessel be described in the policy

---

[1] [Reported by William P. Mason, Esq.]

[2] See Jolly v. Walker, Marsh. Ins. 195; Parr v. Anderson, 6 East, 202; Park. Ins. (6th Ed.) 399; Hooe v. Mason, 1 Wash. [Va.] 207, 211.

as a letter of marque or not, provided the fact of her sailing under such a commission, be known to the underwriters. The description of the fact, does not make the construction of the policy more broad, but it repels any defence founded upon the concealment of a fact, material to the risk. There are many cases, in which this doctrine is applied. Although this is my opinion, yet as the principal question in this case turns upon another point, I am disposed to reserve this point, and to direct the jury to find a verdict for the defendant, unless the capture was made in necessary self defence.

Whether a vessel be commissioned or not, she has a right to repel any attack of an enemy, and to protect and defend herself by all reasonable precautions, against a meditated hostile attack. If a vessel, supposed to be an enemy cruiser, be in sight, and apparently intend an attack upon a merchant vessel, the master of the latter is bound to exercise his best skill and judgment as to the time and mode of his defence, and if he act honestly and fairly, he will be justified, whatever may be the event. He is not bound to endeavour to make his escape in the first instance, and on failure of this, to meet the enemy; nor is he bound to lay by or fly until an attack is commenced upon him, and he has received injury, and then, and not before, to exert his right of self-defence. The law vests him with a large discretion for the benefit of all concerned. He is to consult the safety of the persons and property on board, in the best manner he can. He may lay to, or chase the enemy ship, if he deem that the most effectual means of securing his object. It may be his best course to begin the attack, and to attempt to cripple the enemy, or to encourage his own crew by commencing a chase, or to intimidate the enemy by laying to, and shewing a determination to resist any attack.[3] These are considerations, which are confided to his discretion, and he is to judge, under all circumstances, what is the most promising mode of defence. To deprive him of this right of choice, would be to subvert the great object of his appointment, and to sacrifice to ignorance and mistake, all the advantages of skill and management. The only question in cases of this nature is, whether what is done, is fairly attributable to a mere intention of self-defence, or to motives of another nature, such as the desire of profit. If the former, then the act is justifiable; if the latter, then it is a deviation. Apply these principles to the present case. If, when the Volant wore round to attack the Criterion, it was for the purpose of self defence, to intimidate the enemy, and to repel a meditated attack, before the Volant should herself be disabled, then it is clear, that the act was not a deviation. But if this was wholly unnecessary, and was done by the master without any view

to self-defence, and for the mere purpose of making a prize, then it was a deviation.

But it is contended, that if the capture was made solely in self-defence, still the master had no right to take possession of, and man out the prize, but was bound to proceed on his voyage without this delay. I am of a different opinion. If the capture was made in self-defence, the master had a right to take possession of his prize, and if without injuriously weakening his own crew, he could man the prize, he had a right so to do; and the delay for these purposes was not a deviation. He had a right to make the capture effectual, to prevent the enemy from re-commencing the attack, or giving information to other cruisers. The right of capture drew after it all the other incidents. It would be most mischievous to the interests of trade, to discourage a crew from making a gallant defence by the knowledge, that in no event could they reap a reward from the victory. I know of no authority in the law, that compels me to such a doctrine, and I cannot perceive that it stands on any solid principle of justice or reason, or public convenience.

Verdict for plaintiffs.

A motion was afterwards made for a new trial, upon the ground that there was error in the law as laid down by the court; but the motion was overruled, and judgment passed for the plaintiff.

HAVEN (UNITED STATES v.). See Case No. 16,788.
HAVEN (UNITED STATES & FOREIGN SALAMANDER FELTING CO. v.). See Case No. 16,788.

---

[3] See Parr v. Anderson, 6 East, 202. Lord Ellenborough's remarks at the trial at nisi prius.

